IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| KENNETH CHERCH, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIV. NO. 1:13-cv-586-WHA-WC |
| ) | |
| OFFICER JIM MOCK; CORPORAL ) | |
| GARY VICKERS, and OFFICER TYLER ) | |
| HURST, ) | |
| ) | |
| Defendants. ) | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

**I. INTRODUCTION**

In this 42 U.S.C. § 1983 action, plaintiff Kenneth Cherch ("Cherch"), a former inmate of the Alabama Department of Corrections, claims that defendants Jim Mock, Gary Vickers, and Tyler Hurst, all law enforcement officers of the Geneva, Alabama, Police Department, conducted an unlawful search and seizure of items in Cherch's hotel room, which culminated in his arrest and the filing of drug charges against him. Cherch unsuccessfully sought to suppress the search and its fruits, then pleaded guilty to possession with intent to distribute illegal drugs. Cherch has since been released from custody.

Cherch does not clarify in his pleadings whether he sues defendants in their official capacity, individual capacity, or both. In the interest of fairness and completeness, the undersigned will presume that Cherch brings claims against defendants in their

individual and official capacities. The court previously dismissed the Police Department and all but Cherch's claims for damages against defendants Mock, Vickers, and Hurst. Doc. Nos. 18, 25, 26. Defendants filed special reports and supporting evidentiary materials addressing Cherch's claims for relief. Upon consideration of the evidentiary materials filed in support thereof, the undersigned construes defendants' reports as a motion for summary judgment, and upon consideration of this motion and the evidentiary materials filed in support thereof, the undersigned concludes that defendants' motion for summary judgment is due to be granted.

## II. SUMMARY JUDGMENT

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no [dispute] as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (per curiam) (citation to former Fed. R. Civ. P. 56 omitted; "issue" altered to "dispute" to reflects the stylistic change in the current rule). The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes

2

demonstrate the absence of a genuine [dispute] of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (alterations added). The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322-24.

Defendants have met their evidentiary burden and demonstrated the absence of any genuine dispute of material fact. Thus, the burden shifts to Cherch to establish, with appropriate evidence beyond the pleadings, that a genuine dispute material to the case exists. *Celotex*, 477 U.S. at 324; Fed. R. Civ. P. 56(e)(3) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact [by citing to materials in the record including affidavits, relevant documents or other materials], the court may . . . grant summary judgment if the motion and supporting materials--including the facts considered undisputed--show that the movant is entitled to it . . . ."). A genuine dispute of material fact exists when the nonmoving party produces evidence that would allow a reasonable fact-finder to return a verdict in its favor. *Greenberg*, 498 F.3d at 1263. The evidence must be admissible at trial, and if the nonmoving party's evidence "is merely colorable . . . or is not significantly probative . . . summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986); Fed. R. Civ. P. 56(e). "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice . . . ." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir.

3

1990) (citing *Anderson*, 477 U.S. at 252). Conclusory allegations based on subjective beliefs are likewise insufficient to create a genuine dispute of material fact. *Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997) (per curiam). Only disputes involving material facts are relevant, and what is material is determined by the substantive law applicable to the case. *Anderson*, 477 U.S. at 248. To demonstrate a genuine dispute of material fact, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255. Although factual inferences must be viewed in a light most favorable to the nonmoving party and *pro se* complaints are entitled to liberal interpretation by the court, a *pro se* litigant does not escape the burden of sufficiently establishing a genuine dispute of material fact. *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990). Thus, a plaintiff's *pro se* status alone does not mandate this court's disregard of elementary principles of production and proof in a civil case. In this case, Cherch fails to demonstrate a requisite genuine dispute of material fact so as to preclude summary judgment on his claims against the defendants. *Matsushita*, 475 U.S. at 587.

## A. Summary of Material Facts[1]

On March 10, 2013, at about 9:00 p.m., defendant Hurst[2] investigated a report involving Natasha Simmons ("Simmons"), who was a friend of plaintiff Cherch's girlfriend. Doc. No. 33-1, at 11. Simmons, along with another woman, allegedly banged on the apartment door of Jessica Hall ("Hall"), rammed Simmons's car into Hall's car, and fled. Doc. No. 33-1, at 11, 106-07; Doc. No. 33-2, at 30; Hurst Decl. ¶ 2. Hours later, at about 3:00 a.m. on March 11, 2013, defendant Hurst was notified that Simmons was in Room 116 at the Briarwood Inn. Doc. No. 33-1, at 11, 106-07; Doc. No. 33-2, at 9; Hurst Decl. ¶ 3. Defendant Hurst went to the Briarwood Inn. Doc. No. 33-1, at 11; Hurst Decl. ¶ 3.

Defendant Mock, a Geneva police officer who was off duty but living at the Briarwood Inn at the time,[3] was at the motel when defendant Hurst arrived. Doc. No. 33-2, at 2-3; Hurst Decl. ¶ 3. Earlier in the day, defendant Mock had noticed Simmons around the motel, and had observed her going to and from Room 116, getting food and

---

[1] The undersigned views the evidence in the light most favorable to Cherch, the nonmoving party. *See Mize v. Jefferson City Bd. of Educ.,* 93 F.3d 739, 742 (11th Cir. 1996) ("[A]ll inferences drawn from the evidence [for purposes of summary judgment] must be viewed in the light most favorable to the non-moving party.").

[2] On March 10 and 11, 2013, all defendants, including defendant Hurst, were sworn police officers employed by the City of Geneva, Alabama. Doc. No. 33-5, at ¶ 10 ("Vickers Aff."); Doc. No. 33-6, at ¶ 3 ("Lindsey Decl."); Doc. No. 33-7, at ¶ 15 ("Hurst Decl.").

[3] As a sworn officer, defendant Mock was authorized to take police action within Geneva whether he was on or off duty. Vickers Aff. ¶ 3.

items from Dollar Store, and bringing those items to the room. Doc. No. 33-2, at 3-4, 17. Based on his observations, defendant Mock believed Simmons was staying in Room 116. *Id*.

When defendant Hurst arrived at the motel to look for Simmons, he knocked on the door of Room 116, and Simmons answered. Doc. No. 33-1, at 11; Doc. No. 33-2, at 4, 26; Hurst Decl. ¶ 4. Looking into the room, defendant Mock saw another woman—Patricia Sweat ("Sweat")—asleep in the bed. Doc. No. 33-1, at 11; Doc. No. 33-2, at 5, 16; Hurst Decl. ¶ 4; Doc. No. 35-7, at ¶ 2 ("Cherch Decl."). Next to Sweat on the nightstand was a small container with what appeared to be drug residue. Doc. No. 33-1, at 11; Doc. No. 2, at 5, 16.

Defendant Mock asked Simmons to step out of the room. Doc. No. 33-1, at 11; Doc. No. 33-2, at 4-5, 20; Hurst Decl. ¶ 5. Simmons offered that she knew why officers were there, and that she was going to jail.[4] *Id.* Hurst Decl. ¶ 5.

Defendant Vickers, another Geneva police officer, arrived while defendant Mock and defendant Hurst were speaking with Simmons. Vickers Aff. ¶ 3. Defendant Mock told Simmons that he could see, in plain sight, narcotics on the counter in the room and another woman lying on the bed. Doc. No. 33-2, at 6-7, 16-17. Defendant Mock asked Simmons for consent to search the room. *Id*. According to defendant Mock, Simmons said she was staying in the room, but did not state whether she had authorization to give

---

[4] Simmons admitted to driving to Hall's apartment, beating on the door, and hitting Hall's car, although she claimed that the collision was accidental. Doc. No. 33-1, at 11; Doc. No. 33-2, at 4-5, 20; Hurst Decl. ¶ 5.

6

permission to enter. Doc. No. 33-2, at 17-18. Defendant Hurst avers that Simmons had full custody and control of Room 116. Hurst Decl. ¶ 6. Defendant Hurst also avers that Simmons said she was staying in Room 116, and when defendant Mock asked for her consent to search the room, Simmons granted it. *Id*. Defendant Vickers states that he heard defendant Mock ask for Simmons's consent to search the room, and that Simmons gave permission. Vickers Aff. ¶ 4. Cherch was not present at the time Simmons gave permission to search the room. *Id*. It was later discovered that Room 116 was rented in Cherch's name only. Doc. No. 33-2, at 18; Doc. No. 33-6, at 33.

Inside the room, defendant Mock recovered a container and straw, similar to those used to ingest narcotics, from the nightstand. Doc. No. 33-1, at 11; Doc. No. 33-2, at 6, 30; Vickers Aff. ¶¶ 4-5; Hurst Decl. ¶¶ 7-8. Defendants noticed other drug evidence in the room, including glass smoking pipes, a broken pill in a plastic cigarette wrapper, and a syringe. Doc. No. 33-1, at 11; Doc. No. 33-2, at 6, Vickers Aff. ¶¶ 5-6; Hurst Decl. ¶ 8. The officers also found Sweat unresponsive, so they called for emergency medical services. Doc. No. 33-1, at 11; Doc. No. 33-2, at 6, 30; Vickers Aff. ¶¶ 4-5; Hurst Decl. ¶¶ 7-8. Defendant Mock eventually woke Sweat and then canceled the call for emergency medical services. Doc. No. 33-1, at 11; Doc. No. 33-2, at 19; Vickers Aff. ¶ 5; Hurst Decl. ¶ 8.

Defendant Hurst asked Simmons where her car was, and she said Cherch had it but would return it shortly. Doc. No. 33-1, at 11; Doc. No. 33-2, at 3-4; Vickers Aff. ¶ 7;

7

Hurst Decl. ¶ 9. Defendant Hurst wanted to inspect the car for damage related to the earlier reported incident involving Hall, so he asked Simmons to call Cherch to back the car. Doc. No. 33-1, at 11; Doc. No. 33-2, at 7; Hurst Decl. ¶ 9. Simmons did, and officers overheard a male voice on the line saying that he would return in a few minutes. Doc. No. 33-1, at 11; Doc. No. 33-2, at 8, 22; Vickers Aff. ¶ 7; Hurst Decl. ¶¶ 9-10.

When Cherch arrived, defendant Hurst and defendant Mock were waiting in Room 116. Doc. No. 33-1, at 11; Hurst Decl. ¶ 10. Defendant Vickers was waiting nearby in his car in case Cherch attempted to flee. Vickers Aff. ¶ 7. When Cherch entered the room, defendant Hurst and defendant Mock identified themselves and grabbed Cherch by his arms. Doc. No. 33-1, at 11; Doc. No. 33-2, at 8, 21-24; Hurst Decl. ¶ 10. Cherch then dropped a bag containing a white crystal substance that looked like methamphetamine and a glass smoking device with residue inside. Doc. No. 33-1, at 11; Doc. No. 33-2, at 8, 22, 29; Hurst Decl. ¶ 10. The white crystal substance field-tested positive for methamphetamine. Hurst Decl. ¶ 12. Defendant Hurst and defendant Mock handcuffed Cherch, walked him outside, patted him down, and found additional evidence of drugs and drug paraphernalia. Doc. No. 33-1, at 11; Doc. No. 33-2, at 8, 23; Hurst Decl. ¶¶ 11-12. Defendant Hurst arrested Cherch for trafficking methamphetamine based on the quantity of white substance found. Doc. No. 33-1, at 11; Hurst Decl. ¶ 12; By the time defendant Vickers returned to Room 116, Cherch was already in custody. Vickers Aff. ¶ 8. Simmons admitted that she knew Cherch used her car to buy drugs, and her car was

impounded. Hurst Decl. ¶ 13. Simmons and Sweat were arrested for possession of drug paraphernalia. Hurst Decl. ¶ 13.

Later in the day on March 11, 2013, defendant Hurst submitted a statement of probable cause and a sworn criminal complaint to a magistrate, who found probable cause and issued a warrant for Cherch's arrest, which defendant Hurst executed that day. Doc. No. 33-1, at 11-12; Hurst Decl. ¶ 14. A grand jury indicted Cherch for trafficking in methamphetamine. Doc. No. 33-1, at 27-28. Cherch, through counsel, moved to suppress evidence obtained in connection with the search of Room 116. Doc. No. 33-1, at 49. After a hearing, the trial court denied the motion to suppress, ruling that officers "could believe that Jessica Simmons who gave consent had joint access to the room," and "the police had consent to search the room." Doc. No. 33-1, at 101-02; Doc. No. 33-2.

The minimum weight to support a drug trafficking charge in Alabama is 28 grams of illegal drugs, and the drugs recovered from Cherch's room weighed 27.6 grams (+/- 1.3 grams). Doc. No. 33-3, at 1-2. Cherch and the prosecutor agreed to a plea deal in which Cherch pled to the less serious offense of possession with intent to distribute. Doc. No. 33-1, at 120. Cherch pled guilty, and he does not wish to upset his plea bargain. Doc. No. 33-4; Doc. No. 35, at 1.

## B. Qualified Immunity[5]

Cherch claims that defendants conducted an illegal search and arrested him without probable cause for violating drug laws. Defendants raise several defenses, including qualified immunity. Because qualified immunity is determinative of the issues in this case, the undersigned addresses it first.

Qualified immunity offers complete protection from civil damages for government officials sued in their individual capacities if their conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments, and protects all but the plainly incompetent or those who knowingly violate the law." *Messerschmidt v. Millender*, 132 S. Ct. 1235, 1244 (2012) (quotation marks and citations omitted). Further, qualified immunity is not merely a defense against liability but rather immunity from suit, and the Supreme Court "repeatedly [has] stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Pearson v. Callahan*, 555 U.S. 223, 231-32 (2009)

---

[5] The undersigned notes that the Heck doctrine may also apply. *See Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994) ("[I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm cause by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus."). However, because the undersigned concludes that defendants are entitled to qualified immunity, the undersigned will not delve into the *Heck* analysis.

(quotation marks and citations omitted) (alteration added). To receive qualified immunity, the public official must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred. *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002). Once established, the burden shifts to the plaintiff to show that qualified immunity is not appropriate. *Courson v. McMillian*, 939 F.2d 1479, 1487 (11th Cir. 1991). To satisfy that burden, a plaintiff must show two things: (1) that a defendant committed a constitutional violation, and (2) that the constitutional right a defendant violated was "clearly established." *Crosby v. Monroe Cty.*, 394 F.3d 1328, 1332 (11th Cir. 2004).

Here, there is no dispute that defendants were acting within the course and scope of their discretionary authority when the incidents complained of occurred. Therefore, the burden shifts to Cherch to allege facts that, when read in a light most favorable to him, show that defendants are not entitled to qualified immunity. *Cottone v. Jenne*, 326 F.3d 1352, 1358 (11th Cir. 2003). Cherch fails to meet that burden.

**1. Qualified Immunity Applies to Defendants' Regarding the Search of Room 116.**

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures[.]" U.S. Const. amend. IV. "In the absence of a warrant, a search is reasonable only if it falls within a specific exception to the warrant requirement." *United States v. Watkins*, 760 F.3d 1271, 1278 (11th Cir. 2014) (quotation marks and citation omitted). One exception

to the rule requiring a warrant is when "voluntary consent has been obtained, either from the individual whose property is searched, or from a third party who possesses common authority over the premises[.]" *Illinois v. Rodriguez*, 497 U.S. 177, 181 (1990). "Common authority . . . rests . . . on mutual use of the property by persons generally having joint access or control for most purposes." *United States v. Matlock*, 415 U.S. 164, 171 n.7 (1974). "[C]ommon authority over premises or effects is valid as against the absent, nonconsenting person with whom that authority is shared." *Id.* at 170. Authority can be actual or apparent, *United States v. Watkins*, 760 F.3d 1271, 1278 (11th Cir. 2014), and the exception "extends even to entries and searches with the permission of a co-occupant whom the police reasonably, but erroneously, believe to possess shared authority as an occupant[.]" *Georgia v. Randolph*, 547 U.S. 103, 109 (2006). To sufficiently object, the co-tenant must be present and object. *See Watkins*, 760 F.3d at 1281, 1283. The question of consent is "judged against an objective standard: would the facts available to the officer at the moment . . . warrant a man of reasonable caution in the belief that the consenting party had authority over the premises?" *United States v. Mercer*, 541 F.3d 1070, 1074 (11th Cir. 2008) (quoting *Rodriguez*, 497 U.S. at 189, with alterations).

Here, Cherch argues that Simmons had no authority to consent to the search of Room 116. To overcome defendants' qualified immunity, Cherch must demonstrate it would have been clear to a reasonable officer that the warrantless entry into the room was

unlawful in light of the facts known to the officer and clearly established law on March 11, 2013. *E.g.*, *Wilson v. Phares*, No. 1:14-CV-276-WKW, 2015 WL 1474627, at *10-11 (M.D. Ala. Mar. 31, 2015) (discussing qualified immunity in context of consent to search); *see also Mullinex v. Luna*, 136 S. Ct. 305, 308 (2015) ("We do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate."). First, Cherch cites no case law or binding authority establishing a concrete factual context that makes it obvious to a reasonable officer that such actions violate the Fourth Amendment. *See id.* (discussing one method to show clearly established law). Second, Cherch cannot establish defendants' acts violate the core of Fourth Amendment principles despite the lack of case law. *See id.* at *14 (discussing second method to show that unlawfulness of acts were readily apparent). Here, viewing the facts in the light most favorable to Cherch, defendant Mock observed Simmons coming and going from the room with food and other items during the day. Simmons was in the room during overnight hours, and she told defendant Mock that she was staying there. When requested, Simmons gave consent to enter the room and to search it, during which time no one else objected. Although officers did not ascertain if the room was rented in Simmons's name prior to executing the search, it would not have been clear to a reasonable officer—based on the facts available to the officers at that 3:00 a.m. moment—that Simmons did not have joint access and control of the room, or that she did not have apparent authority to consent to search the room. *See id.* (not clear that

13

officer's "midnight warrantless entry into a commercial premises' locked room after his canine partner alerted to human scent violates the Fourth Amendment, where an employee had consented to the search of his employer's premises for intruders and where [the officer] had no knowledge that an authorized employee was sleeping in that locked room. . . [and plaintiff] has not shown that the warrantless entry went well beyond anything that a reasonable officer would have considered reasonable"). Consequently, defendants are entitled to qualified immunity on Cherch's claim that they entered his room without a warrant and in violation of his Fourth Amendment right to be free from an unreasonable search.

### 2. Qualified Immunity Applies to Defendants' Regarding the Arrest of Cherch

"It is clearly established that an arrest made without probable cause violates the Fourth Amendment." *Wilkerson v. Seymour*, 736 F.3d 974, 977 (11th Cir. 2013) (quotation marks and citation omitted). "Probable cause exists when 'the facts and circumstances within the officer's knowledge, of which he or she has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense.'" *Id.* at 978 (quoting *Lee*, 284 F.3d at 1195 (internal quotation marks omitted)). An officer is entitled to qualified immunity from a claim for money damages when "the officer had 'arguable probable cause,' that is, where 'reasonable officers in the same circumstances and possessing the same knowledge as the Defendants could have

14

believed that probable cause existed to arrest' the plaintiff[]." *Wilkerson*, 736 F.3d at 977-78 (quotation marks and citation omitted, alteration added). It is the plaintiff's burden to show that no reasonable officer would have found probable cause under the totality of the circumstances. *Kingsland v. City of Miami, Fla.*, 382 F.3d 1220, 1232 (11th Cir. 2004) (citation omitted).

Viewing the facts in the light most favorable to Cherch, reasonable officers in the same circumstances as defendants[6] could have believed they had probable cause to arrest Cherch for drug offenses. Officers found on a nightstand in Room 116 a small container and straw similar to those used to store and ingest illegal drugs. They also found glass smoking pipes, a broken pill in a plastic cigarette wrapper, and a syringe. When Cherch returned, he dropped a bag with a glass smoking device with residue inside and a substantial amount of a white crystal substance that looked like methamphetamine. The substance field-tested positive for methamphetamine. Alabama law provides that "[a] person commits the crime of unlawful possession with intent to distribute a controlled substance if, except as otherwise authorized by law, he or she knowingly possesses any of the following quantities of a controlled substance . . . More than eight grams, but less than 28 grams, of methamphetamine . . . ." Ala. Code § 13A-12-211(c)(6). Based on the amount of drugs found, defendants had arguable probable cause to arrest Cherch for

---

[6] Hurst actually arrested Cherch while Mock was present. Vickers was not present when Cherch was arrested but arrived later. To the extent Mock and Vickers participated in the arrest, they are entitled to qualified immunity.

trafficking drugs,[7] and they are entitled to qualified immunity on Cherch's claim that he was arrested in violation of his Fourth Amendment right to be free from arrest without probable cause.

### 3. Cherch's Claims Against Defendants in Their Official Capacities Fail.

To the extent Cherch claims a constitutional violation against defendants in their official capacities, the claim is effectively asserted against the City of Geneva, defendants' employer. *See Kentucky v. Graham*, 473 U.S. 159, 165 (1985) ("Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" (quoting *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 690, n. 55 (1978)). Because Cherch's claims against defendants fail, he cannot maintain his suit against the City. *See Urbanique Prod. v. City of Montgomery*, 428 F. Supp. 2d 1193, 1225 (M.D. Ala. 2006) ("Municipal liability is foreclosed on Plaintiffs' Fourteenth Amendment claim against the City because the court has concluded that no underlying equal protection violation was committed by [defendants] as to the events at issue in this case.") (citing *Rooney v. Watson*, 101 F.3d 1378, 1380 (11th Cir. 1996) ("An inquiry into a governmental entity's custom or policy is relevant only when a constitutional deprivation has occurred."); *Vineyard v. Cty. of Murray, Ga.*, 990 F.2d 1207, 1211 (11th Cir. 1993) ("Only when it is clear that a

---

[7] Defendants also had arguable probable cause to arrest Cherch for other violations of Alabama law. *See* Ala. Code §§ 13A-12-211(c) (unlawful distribution of controlled substances), 13A-12-212 (unlawful possession of controlled substances), 13A-12-214 (unlawful possession of marijuana), 13A-12-231(11) (trafficking in methamphetamine), and 13A-12-260 (drug paraphernalia).

16

violation of specific rights has occurred can the question of § 1983 municipal liability for the injury arise."). In addition, Cherch fails to make any showing that defendants acted pursuant to a custom or policy that constituted a violation of Cherch's constitutional rights. *See McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004) (citing *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)). Defendants are therefore due to be granted summary judgment on claims brought against them in their official capacities.

### III. CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1. The motion for summary judgment (Doc. 33) on behalf of the defendants be GRANTED;

2. This case be dismissed with prejudice in accordance with Federal Rule of Civil Procedure 56.

It is further

ORDERED that on or before September 9, 2016, the parties may file objections to the Recommendation. Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which the party is objecting. Frivolous, conclusive or general objections will not be considered by the District Court. The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and advisements in the

Magistrate Judge's Recommendation shall bar the party from a de novo determination by the District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings in the Recommendation accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); *see also Stein v. Reynolds Sec., Inc.*, 667 F.2d 33 (11th Cir. 1982); *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (en banc) (adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981).

DONE this 26th day of August, 2016.

/s/ Wallace Capel, Jr.
UNITED STATES MAGISTRATE JUDGE